NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |
|---|---|
| : | **Hon. Dennis M. Cavanaugh** |
| DIRECTECH DELAWARE, INC., a: | |
| Delaware Corporation, f/k/a DirecTech, Inc.: | **OPINION** |
| and Directec, Inc., Individually and as: | |
| Assignee of Directech Southwest, Inc., a: | Civil Action No. 08-CV-3527 |
| Louisiana Corporation, : | |
| : | (DMC-MF) |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| ALLSTAR SATELLITE, INC,., a New : | |
| Jersey Corporation, *et al*. | |
| | |
| Defendants. | |

---

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon cross-motions by Directech Delaware, Inc. ("DirecTech" or "Plaintiff") and Staten Island Satellite, Inc. ("Staten") Allstar Satellite, Inc. ("Allstar") and David K. Cella ("Cella") (collectively, "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, this Court concludes that summary judgment is **granted in part** and **denied in part**.

## I.    BACKGROUND

Cella is the President, sole shareholder and owner of Staten. Staten performed DirecTV satellite installation services for DirecTech in New York. On June 28, 2004, Cella signed a document forwarded by fax from DirecTech, the Sub-Alternative Fulfillment Service Agreement,

in his capacity as President of Staten.  This document memorializes the relationship between DirecTech and Staten.

Cella indicates that the document was signed immediately at the instruction of DirecTech and further, Cella indicates that he did not review the document before signing and returning it to DirecTech.  Cella claims he was advised that a failure to sign the document would result in a termination of the business relationship between Staten and DirecTech.  A DirecTech representative never signed this document.  Cella never received a fully executed copy from DirecTech.

Cella asserts that subsequent to signing this document, he received a telephone call from DirecTech requesting proof of liability insurance.  In accordance with this request, Cella forwarded a copy of a liability insurance policy to DirecTech.  Cella maintains that he was never orally advised that the document he had signed was a contract or of any requirement to maintain workers' compensation insurance.  Cella did not maintain workers' compensation insurance.

The main provision at issue in the Sub-Alternative Fulfillment Service Agreement concerns a requirement to maintain workers' compensation insurance.  Paragraph 15 reads, "From and after the date of this agreement:"

    a.    Coverage. Contractor shall obtain and maintain insurance with coverage and limits as follows:

    (i)    Contractor shall carry a policy (or policies) of Workers Compensation Insurance covering Contractors' employees in each jurisdiction in which Contractor is performing work pursuant to this Agreement.  Each such policy shall be on a form approved for use in each state in which work is being performed and shall provide, at a minimum, statutory Workers' Compensation coverage and Employer's Liability Insurance at limits of not less than $500,000.00 per employee per accident for Bodily Injury by Accident, $500,000.00 per employee per occupational disease and $500,000.00 for all

occupational diseases. If Contractor shall be performing work pursuant to this Agreement in a state known as a "Monopolistic" state, or if the Contractor has qualified in any state as a self-insurer, the Employers' Liability Coverage for that state may be attached either to another Workers' Compensation policy or to the Commercial General Liability Coverage.

Cella is also the President of Allstar.  Allstar performs installation services in New Jersey. On May 4, 2005, a contract between DirecTech and Allstar was executed.

Chernor Jalloh a/k/a Abu Jalloh ("Jalloh") is identified as an independent contractor pursuant to a 1099 Form.  In accordance with the terms of the contract, Jalloh performed installation services using a DirecTv vehicle, a DirecTv identification card and a DirecTv uniform.  Jalloh received payment for his services from Staten.  Jalloh was injured on September 18, 2004.  On the day of the injury, Jalloh is alleged to have advised a DirecTech dispatcher of his reluctance to perform the installation in light of poor weather conditions.   In response, Mr. Ramos, a representative of DirecTech, allegedly advised Mr. Jalloh that if he failed to perform the job, he would no longer be considered an authorized contractor.  As a result, Jalloh filed a workers' compensation claim before a different court, naming Plaintiff as one of the defendants in that action.  A final disposition has not been rendered in that action.

## II.    LEGAL STANDARD

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009).  However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

3

as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c)." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56©, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912

4

F.2d at 657.

**III.   DISCUSSION**

    A.    Contract

        1.    Validity

Plaintiff moves for summary judgment, alleging that Defendants have breached a valid and enforceable contract requiring Defendants to carry workers' compensation insurance. Disputing the existence of a viable and enforceable contract between Staten and DirecTech, Defendants present a cross-motion for summary judgment. Pursuant to that cross-motion, Defendants assert that Plaintiff never signed the agreement memorializing acceptance and that the circumstances under which Defendants signed the document invalidate the purported contract.[1]

As a general proposition, "[t]he essentials of a valid contract are mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization." Bayside Chrysler Plymouth Jeep Eagle v. Elizabeth MA & David MA, 2006 N.J. Super. Unpub. LEXIS 2924 (App. Div. May 6, 2006) (citing Cohn v. Fisher, 118 N.J. Super. 286, 291 (Law Div. 1972); Davis v. Wells, 104 U.S. 159 (1881)).[2] "[T]he question of whether a contract exists between two parties is fact-

---

[1]

It is undisputed that a contract between Allstar Satellite, Inc. and DirecTech was executed on May 4, 2005.

[2]

To establish a valid contract, a party must prove:

    1. Meeting of the minds[, that is,] the parties reached an agreement to do what is alleged.

    2. Offer and acceptance[, that is,] one party communicated a willingness to enter into the agreement and the other party gave some outward indication that the agreement was accepted.

    3. Consideration[, that is,] each party gave or promised something of value to the other.

specific. Under New Jersey law, an enforceable contract is created when two parties 'agree on essential terms and manifest an intention to be bound by those terms.'" Barak v. Obioha, 2003 U.S. App. LEXIS 16654, *6 (3d Cir. Aug. 13, 2003) (citing Weichert Co. Realtors v. Ryan, 128 N.J. 427 (2001)). "Such agreement may be evidenced by an express written document or implied from the parties' conduct and the surrounding circumstances." Id.; see also Troy v. Rutgers, 168 N.J. 354 (2001) ("The modern view is that, 'just as assent may be manifested by words or other conduct, … so intention to make a promise may be manifested in language or by implication from other circumstances.'"). "In addition, the acceptance of mutual obligations must be accompanied by consideration, which need be nothing more than a 'very slight advantage to one party, or a trifling inconvenience to the other.'" Id. (citing Martindale v. Sandvik, 173 N.J. 76 (N.J. 2002).

"Unless required by the Statute of Frauds, N.J.S.A. 25:1-5, or as otherwise provided by law, contracts do not need to be in writing to be enforceable." Leodori v. Cigna Corp., 175 N.J. 293, 305 (2003). "When one party, however, presents a contract for signature to another party, the omission of that other party's signature is a significant factor in determining whether the two parties mutually have reached an agreement." Id

"When interpreting a contract, the court's goal is to ascertain the 'intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain . . . .'" Driscoll Const. Co., Inc. v. State, Dept. of Transportation, 371 N.J. Super. 304, 313 (App. Div. 2004) (citing Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 184 (1981) (internal

---

4. Certainty[, that is,] the terms of the agreement were reasonably certain.
Big M, Inc. v. Dryden Advisory Group, 2009 U.S. Dist. LEXIS 55423, *35 (D.N.J. June 30, 2009)

citations omitted)). "The interpretation or construction of a contract is usually a legal question for the court, 'suitable for a decision on a motion for summary judgment.'" Id. (internal citations omitted). However, "where there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury." Id. (internal citations omitted). "While in general the existence of a contract is a question of law for the Judge to decide, '[w]hen the evidence is conflicting it is for the jury to determine whether a contract does in fact exist, and, if so, what are its terms?'" West v. IDT Corp., 2008 U.S. Dist. LEXIS 21595, *32 (D.N.J. March 19, 2008) (citing American Lumbering Mfg. Co. v. Atlantic Mill & Lumber Co., 290 F. 632, 634 (3d Cir. 1923); see also Elliott & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 327 (3d Cir. 2007)).

"A binding contract is not formed unless there is an acceptance to the party's offer." Big M, Inc. v. Dryden Advisory Group, 2009 U.S. Dist. LEXIS 55423, *39 (D.N.J. June 30, 2009) (citing Weichert, 128 N.J. at 435-36. "The acceptance fulfills the requirement of mutual assent." Id. "To be effective and create a binding contract, the acceptance must be absolute and match the terms of the offer." Id. (citing State v. Ernst & Young, L.L.P., 386 N.J. Super. 600, 612 (App. Div. 2006)). "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Id. at *39 n.5 (citing Restatement (Second) of Contracts § 50 (1981)). "Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise." Id.

The present claim arises pursuant to a document signed by Satellite on June 28, 2004, but unsigned by DirecTech. Consistent with these documents, DirecTech asserts that Defendants had an obligation to obtain workers' compensation insurance. A workers' compensation claim has been

instituted in a separate proceeding.

It is undisputed that the executed version of the June 28, 2004 agreement returned to DirecTech constituted an offer on behalf of Staten Island Satellite, Inc. Acceptance was not rendered in the manner invited by the document itself, namely a signature by the President of DirecTech Woody D. Bileyou. Although DirecTech failed to sign the contract, DirecTech tendered sufficient performance consistent with the terms of the contract to manifest an acceptance of the contract, including providing Work Orders as well as DirecTv equipment consistent with the terms of the contract. There is a viable and enforceable contract between the parties.

2.      Breach

Plaintiff asserts that in accordance with the contract, Defendants were required to maintain workers' compensation insurance and the failure to do so constitutes a breach of contract. Defendants contend that because an issue of material fact exists concerning whether Jalloh is an independent contractor or an employee summary judgment is precluded.

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must prove four elements: (1) a valid contract existed between plaintiff and defendant; (2) defendant breached this contract; (3) plaintiff performed under this contract; and (4) plaintiff was damaged as a result of defendant's breach." West v. IDT Corp., 2008 U.S. Dist. LEXIS 21595, *32 (D.N.J. March 19, 2008) (citing Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003)).

Indeed, while a genuine issue of fact may exist concerning the capacity in which Jalloh was operating at the time of the accident, this is not the appropriate forum to address that issue of fact. By contrast, the action instituted by Jalloh is the appropriate medium for determining whether Jalloh

8

is an employee or an independent contractor.  It appears that the issue of breach of contract is contingent upon the final disposition of the related workers' compensation proceeding.  In turn, the element of whether Plaintiff has been damaged by Defendants' alleged breach cannot be resolved until the underlying liability claim of Jalloh has been resolved.  A holding to the contrary presumes that Plaintiff is otherwise not liable for the personal injury/workers' compensation claim asserted by Jalloh in that ongoing litigation.  Therefore, at this time, summary judgment with respect to Count I is **denied.**

      B.     Common Law Fraud; Fraudulent Inducement; and Negligent Misrepresentation

Asserting claims for common law fraud, fraudulent inducement and negligent misrepresentation, Plaintiff contends that although Defendants knowingly and wilfully misrepresented the fact that a workers' compensation insurance policy was in place, Defendants did not maintain such a policy.  Further, Plaintiff asserts that Defendants intended for Plaintiff to reasonably rely upon this misrepresentation resulting in damages to Plaintiff.  Defendants dispute these contentions and claim that there is no proof that Defendants intentionally, wilfully or knowingly misrepresented the existence of a workers' compensation policy or any other term in the contract.

"Proof of common law fraud requires the satisfaction of five elements: a material misrepresentation by the defendant of a presently existing fact or past fact; knowledge or belief by the defendant of its falsity; an intent that the plaintiff rely on the statement; reasonable reliance by the plaintiff; and resulting damages to the plaintiff." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, (2006) (citing Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 541 (App. Div. 1996)).  "To establish [a claim for] fraudulent inducement, [a party must demonstrate] a misrepresentation of a material fact, which was false and known to be false when made, made for the purpose of inducing the other to rely

on it, actual and reasonable reliance on the misrepresentation, and resulting harm." Travelodge Hotels, Inc. v. Honeysuckle Enters., 357 F. Supp. 2d 788, 797-799 (D.N.J. 2005). "To establish a claim of negligent misrepresentation, a plaintiff must prove that an incorrect statement was negligently made and justifiably relied upon to recover damages for economic loss or injury sustained as a consequence of that reliance." In re Schering-Plough Corp. Intron, 2009 U.S. Dist. LEXIS 58900, *117 (D.N.J. July 10, 2009) (citing H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983)).

"Allegations of fraud must be proved by clear and convincing evidence." West v. IDT Corp., 2008 U.S. Dist. LEXIS 21595, *32 (D.N.J. March 19, 2008). "[A]lthough as a general rule a breach of contract may not be converted into a fraud claim for the simple fact of breach, New Jersey courts have also recognized that where, as here, a party is alleged to have been fraudulently induced into entering a contract, that party may maintain allegations of fraud alongside the contract claim." Id. "However, in Gleason v. Norwest Mortgage, Inc., 243 F.3d 130 (3d Cir. 2001), the Third Circuit recognized that a 'morass' exists in the interpretation of New Jersey law on this issue:"

> No New Jersey Supreme Court case holds that a fraud claim cannot be maintained if based on the same underlying facts as a contract claim…. The question of the continuing validity of fraud claims in cases involving frustrated economic expectations under New Jersey law is very complex and troublesome…. The New Jersey District Courts still hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action…. New Jersey state courts have not agreed with the District Courts' interpretation…. The New Jersey Supreme Court still has not decided the issue. We will avoid predicting New Jersey law by deciding the fraud issue on its merits.

Id. at 144. "The courts in this District appear to distinguish between actions for 'fraudulent inducement extraneous to the contract,' which can be maintained alongside the breach of contract action, and actions alleging 'fraud in its subsequent performance,' which are subsumed in the contract claim." West, 2008 U.S. Dist. LEXIS 21595, at *29 (citing Lo Bosco v. Kure Eng'g, 891

F. Supp. 1020, 1032 (D.N.J. 1995)).  The claim for common law fraud in Count II arises from the same provision alleged to have been breached for failure to obtain workers' compensation insurance, therefore, the claim concerns an alleged fraud in the performance of the contract. As a result, Count II of the Complaint is subsumed by the breach of contract claim.  Therefore, with respect to Count II, summary judgment is **granted** in Defendants favor.  This claim is **dismissed.**

"[T]he consensus of courts appears to be that the question of whether a plaintiff relied on a misrepresentation, and whether that reliance was reasonable, is a question of fact best reserved for the jury."  Goen Techs. Corp. v. NBTY, Inc., 2007 U.S. Dist. LEXIS 65396, *11 (D.N.J. Sep. 4, 2007); see Van Dam Egg Co. v. Allendale Farms, Inc., 199 N.J. Super 452, 458 (App. Div. 1985). Therefore, with respect to Counts IV and VI, summary judgment is **denied.**

      D.     Indemnification and Statutory Reimbursement; Pierce Corporate Veil; and Punitive Damages

The remaining issues are contingent upon the foregoing issues of fact as well as the final disposition in the underlying personal injury/workers' compensation claim.  At this time, summary judgment with respect to these claims is premature and therefore, **denied**.

## IV.   C ONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **denied** and Defendants' cross-motion for summary judgment is **denied in part** and **granted in part.**  An appropriate Order accompanies this Opinion.

                                            S/ Dennis M. Cavanaugh
Dated:        May   6  , 2010           Dennis M. Cavanaugh, U.S.D.J.
cc:         All Counsel of Record
              Hon. Mark Falk, U.S.M.J.
              File